[Civ. No. 4040. Second Appellate District, Division Two.—July 16, 1923.]

ALFRED DAY, Respondent, v. WILLIAM T. LAUGHLIN et al., Appellants.

[1] SECRET PROFITS—SALE OF REAL PROPERTY—AGENCY—EVIDENCE—FINDINGS.—In this action to recover the difference between the amount for which defendant sold plaintiff's property and the amount paid by defendant to plaintiff, the evidence was amply sufficient to justify the findings of the trial court as to the enfeebled physical and mental condition of plaintiff during the period covered by the transaction and for many years prior thereto, as to the fact that defendant had been the general agent and trusted confidential adviser of plaintiff in all matters pertaining to plaintiff's property and business affairs, and as to the fact that defendant was the agent of plaintiff for the sale of the property in question; and the fact that the pleadings may have presented

no issue as to the mental and physical condition of plaintiff did not entitle defendant to a reversal of the judgment against him, where plaintiff was entitled to judgment upon the evidence and the findings of the trial court as to defendant's flagrant breach of his duty as plaintiff's agent.

[2] ID.—RELATION OF TRUST—EVIDENCE.—In such action, the trial court did not commit error in receiving in evidence letters written by plaintiff subsequent to the sale of plaintiff's property and which were offered in evidence for the purpose of showing the relation of trust and confidence existing between plaintiff and defendant up to the time when plaintiff discovered the fraud which had been practiced upon him by defendant.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. B. Bigler for Appellants.

F. J. Feeney and E. W. Squier for Respondent.

WORKS, J.—The evidence showed without dispute that plaintiff gave to defendant William T. Laughlin an option to purchase certain real property for a consideration of $10,000, deed to be made to Laughlin or to such person as he might designate, and that Laughlin sold the property to defendant Filipponi for $21,612, paid to plaintiff $10,000, and kept the excess. The action was instituted to recover the amount retained by Laughlin, upon the theory that he was the confidential agent and adviser of plaintiff, and plaintiff's special agent for the sale upon commission of the property described in the option. Deane Laughlin was made a party defendant for the reason that William T. Laughlin, his relative, had conveyed to him a part of the avails of the transaction with Filipponi. The latter was made a defendant because at the time the complaint was filed he had not paid the entire consideration for the purchase of the land. He later paid into court the amount yet due and was not an active party to the litigation. Judgment went for plaintiff and the defendants William T. and Deane Laughlin appeal. It will be understood henceforth that all references to the appellant in the singular contemplate appellant William T. Laughlin.

[1] With two exceptions the points made by appellants are that certain findings of the trial court are not supported by the evidence. These findings, however, are so amply sustained by the record that we shall not be at pains to refer at great length to the facts developed at the trial. The evidence quoted in the briefs, a large part of it uncontradicted and much of it coming from the lips of appellant and from letters written by him, shows that the judgment is eminently equitable and just. From the record presented we cannot doubt that appellant was guilty of a shameful and heartless breach of the confidence which respondent had reposed in him.

It is first contended that the evidence does not sppport a finding that "continuously for more than ten years last past the plaintiff . . . has been and still is afflicted with palsy, and on and continuously for several years preceding" the date of the option "by reason of said disease and old age, and greatly enfeebled physically and mentally and by reason thereof, incapable of attending to his business or of managing his property." There was testimony that respondent had been palsied for fifteen years, that he had been in poor health for that length of time, that "for a good many years" he had been unable to attend to his business and had attended to none of it, and that he got about at all with great difficulty. The trial judge, of course, had an opportunity to observe respondent's age and physical and mental condition. While the latter was on the witness-stand he was questioned thus by the judge: "Q. How long have you been that way? A. I have been that way for ten years, easily. Q. As bad as you are now? A. As bad as I am now. Q. Are you not able to sit quietly at all? A. No." We ourselves are able to determine from some of respondent's answers on the witness-stand that he was not at the time mentally alert.

Another contention of appellants is that the evidence is insufficient to sustain a finding that, at the time of the giving of the option, for more than one year prior thereto, and until several months after the consummation of the sale to Filipponi, appellant was the "general agent and trusted confidential adviser of the plaintiff in all matters pertaining to plaintiff's property and business affairs." There is testimony in the record that when the option was given appel-

lant was engaged to be married to respondent's daughter, that he had for some time visited the Day home three times a week, sometimes every day, and that he frequently took meals at respondent's family table; that he sometimes collected rents for respondent; that he advised respondent "as to the value of different pieces [of property] that he had, . . . and told him which he thought would in time bring him the best income and which would give him the best results for his money"; and that he twice went to Winnemucca, Nevada, on the business of respondent. The record also shows a considerable number of letters written by appellant, signed by him in his own name, and all relating to the business of respondent.

It is also claimed that the evidence fails to sustain a finding that appellant was the agent of respondent for the sale of the property described in the option. There was evidence to show that appellant asked respondent to give him the first chance at the land if he determined to sell; that there followed a conversation between them as to how much appellant could get for the land; that appellant advised respondent to sell; that respondent first offered appellant a five per cent commission for making a sale, but appellant said "No, he did not want to take it on a commission basis, he did not like to do things that way; he would rather get the commission above the sum" respondent would get; that, in a discussion as to price, appellant said he could not sell the property at $20,000, nor at $15,000, but that he thought he could sell at $10,000, and that he would try to sell it for that figure. Respondent's daughter, appellant's fiancee, testified: "He said he couldn't sell this piece of land for him unless he gave him this option, because he said, 'if I go to a man and ask him if he will buy this certain piece of land, and tell him Mr. Day wants to sell it, he will say, "What authority have you to sell it for him?" and if I say I have an option on it he will know the contract will be binding.' " The option was signed a few days later.

Other findings are objected to as being unsupported by the evidence, but either the contentions of respondent as to those findings are disposed of by what we have already said, or they find upon immaterial matters.

Appellants contend that the pleadings present no issue as to the mental and physical condition of respondent. This

claim is made because of the trial court's finding in that regard. An examination of the pleadings discloses that such an issue was sufficiently presented. Even if there were no such issue, however, the merits of the appeal would not be affected by the fact. Respondent was entitled to judgment upon the evidence and the findings of the trial court as to appellant's flagrant breach of his duty as the agent of respondent, entirely aside from any question as to the latter's age or condition of health.

[2] It is insisted that the trial court erred in receiving in evidence certain letters written by respondent. These were offered for the purpose of showing the relation of trust and confidence existing between respondent and appellant up to the time when the former discovered the fraud which had been practiced upon him, which was eight or nine months after the sale to Filipponi, the earliest of the letters having been written some time after the granting of the option. The contention of appellants is that letters written after that event are immaterial. The point is without merit. The letters all related to the business of respondent. One of them, evidently written to a tenant of respondent, may be taken as a sample. It runs: *"In re:* our conversation of yesterday. I again took up the matter of a doorway in the place you now occupy, with Mr. Day. After careful consideration of your request, we deem it necessary that permission be refused you to make the change." Letters such as this, even if they were written after the date of the option, were properly admitted as in some degree showing the confidence reposed in appellant by respondent at the time the paper was executed (*Ward* v. *Andrews,* 44 Cal. App. 390 [186 Pac. 605]). It is to be remembered that appellant was affianced to Miss Day during a continuous period running from before the date of the option to about the time of the discovery of the fraud which appellant had practiced upon her father. The actions of the parties during that entire period would surely indicate their state of mind toward each other at the time the option was granted. The trial court did not err in admitting the letter in evidence.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.